## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**DOROTHY LEWIS AND KENNETH LEWIS,**

      **Plaintiffs,**

**v.**                                    **Civil Action No.**  2:18-483

**LOGAN GENERAL HOSPITAL, LLC**
**D/B/A LOGAN REGIONAL MEDICAL CENTER,**
**a foreign corporation,**

      **Defendant.**

### Preface to Complaint

Pursuant to the provisions of the *West Virginia Medical Professional Liability Act*, West Virginia Code §55-7B-1 *et seq*., the Plaintiff has served, by certified mail with return receipt requested, a Notice of Claim and Screening Certificates of Merit to  each healthcare provider named in this Complaint.

### COMPLAINT

1.      At all times relevant to the litigation in this matter, Plaintiffs were residents and citizens of Logan County, West Virginia.

2.      At all times relevant to this litigation, Logan General Hospital, LLC d/b/a Logan Regional Medical Center (herein after "Logan General") was a foreign corporation which lists it's principle place of business as being in Brentwood, Tennessee.

3.      At all times relevant to the litigation in this matter, Dorothy Lewis was a patient admitted to Logan General from April 25, 2016 through April 26, 2016.

4.      During her admission to Logan General, Jodi Cisco, M.D. was Dorothy Lewis's admitting physician and was responsible for her care and treatment during that hospitalization.

5.     On April 26, 2016, Dorothy Lewis was under the care of various nursing personnel that were employed by and who were acting as the agents and servants of Logan General including but not limited to Nurse A. Mullins, Nurse E. Robinson, C. Hawkins, D. Thompson, and Nursing Assistant R. Jenkins.

6.     During Dorothy Lewis's admission to Logan General, the nursing personnel at Logan General, including the individuals referenced in the preceding paragraph, were both professionally and ethically obligated to advocate for their patient's safety including the safety of Dorothy Lewis.

7.     During Dorothy Lewis's admission to Logan General, the nursing personnel at Logan General, including the individuals referenced in Paragraph 5, were professionally obligated to comply with reasonable standards of nursing care in their treatment of Dorothy Lewis including the obligation to keep Dorothy Lewis's admitting physician apprised of pertinent changes in her medical condition.

8.     During Dorothy Lewis's admission to Logan General, the nursing personnel at Logan General, including but not limited to the individuals referenced in the preceding Paragraphs No. 7 were both professionally and ethically obligated to both timely assess and reassess her condition.

9.     During Dorothy Lewis's admission to Logan General, the nursing personnel at Logan General, including but not limited to the individuals referenced in Paragraph 5, were both professionally and ethically required, if Dorothy Lewis was not receiving appropriate and timely care from Jodi Cisco, M.D. to advocate on her behalf by following all regulations and protocols existing at Logan General to assure that Dorothy Lewis did receive timely and appropriate care.

2

10.     At 9:18 am on April 26, 2016, Nurse A. Mullins noted in the medical records that Dorothy Lewis had a sudden onset of tingling and burning pain in her right leg, rated 8/10 and her pedal pulses were faint to palpitation.

11.     The signs and symptoms observed by Nurse A. Mullins at 9:18 a.m. on April 26, 2016, were classic signs that Dorothy Lewis was suffering from an acute peripheral arterial occlusion in her right leg including the acute sudden onset of severe pain, paresthesia, and significantly diminished pulses.

12.     An acute peripheral arterial occlusion in a patient is a medical emergency which requires prompt recognition and treatment within a limited timeframe.

13.     On April 16, 2016, Logan General did not have vascular or other surgical services to treat emergently an acute peripheral arterial occlusion in a patient suffering from such a condition, while at Logan General, such a patient emergently would have to be transported to another hospital that could provide those services.

14.     Based upon the observations made by Nurse A. Mullins at 9:18 a.m., Nurse A. Mullins contacted Dr. Cisco who, according to the medical records, after being informed of Dorothy Lewis's condition, stated she would be to the floor to see the patient shortly.

15.     In direct violation of the standard of care Nurse A. Mullins failed to notify Dr. Cisco, when she contacted her, that Dorothy Lewis's bilateral pedal pulses were faint to palpitation. If this critical information had been supplied to Dr. Cisco, Dr. Cisco would have immediately ordered a doppler exam of Ms. Lewis's lower extremities which would have revealed, by approximately 10:30 a.m. that morning, that Ms. Lewis had an acute peripheral arterial occlusion which would have required her to be transported to facility that could provide surgical or interventional services. The failure of Nurse A. Mullins to pass on this critical

3

information to Dr. Cisco, directly proximately caused a delay in the diagnosis, treatment, and transfer of Dorothy Lewis to a facility that could treat her acute peripheral arterial occlusion which delay ultimately caused Dorothy Lewis to have her right leg amputated.

16.    At 11:17 a.m., Nurse A. Mullins noted in the medical records that Dorothy Lewis was beginning to have numbness in her right lower extremity and at 11:19 a.m. noted in the medical records that Dorothy Lewis's pedal pulses were not only weak but capillary refill had become sluggish.  In direct violation of the applicable standard of care Nurse A. Mullins failed to notify Dr. Cisco of these critical changes in Dorothy Lewis's condition. The failure to notify Dr. Cisco of these critical changes in Dorothy Lewis's condition, which indicated a clear progression of her acute peripheral occlusion, ultimately delayed the diagnosis, treatment, and transfer of Dorothy. Lewis to a facility that could treat an acute peripheral arterial occlusion which delay ultimately caused Dorothy Lewis to have her right leg amputated.

17.    As a direct and proximate result of not receiving appropriate and critical information from Nurse A. Mullins, Dr. Cisco did not come to floor to examine Dorothy Lewis until 12:58 p.m., three (3) hours and forty-eight (48) minutes after Dorothy Lewis's acute arterial occlusion had occurred.   Dr. Cisco immediately recognized the critical nature of Dorothy Lewis's condition, arranged for Dr. Kitchen at Cabell Huntington Hospital to agree to a transfer of Dorothy Lewis so that she could undergo interventional or surgical vascular services to save her leg.  Dr. Cisco directed Nurse A. Mullins to immediately effectuate that transfer.

18.    In direct violation of the standard of care, Nurse A. Mullins waited over another hour and a half before beginning to make calls to attempt to have Dorothy Lewis transferred.  As a direct and proximate result of this delay, Dorothy Lewis, when she ultimately arrived at Cabell Huntington Hospital, was required to have her right leg amputated when, if an appropriate and

4

timely transfer of her had occurred, more likely than not, she would have not required such an amputation.

19.     The nursing personnel at Logan General Hospital including but not limited to Nurse C. Hawkins, Nurse D. Thompson, Nurse A. Mullins,  Nurse E. Robinson and Nursing Assistant R. Johnson additionally violated the applicable standard of care by not recognizing the emergent nature of Dorothy Lewis's condition, by not understanding Dorothy Lewis's many obvious risk factors for the generation of clots in her arterial vascular system, by not recognizing that Dorothy Lewis was evidencing classic signs of a peripheral arterial occlusion in her right leg, and by not appropriately advocating for Dorothy Lewis by following the protocols, rules, and regulations of Logan General and those that govern the care of nursing personnel by not repeatedly contacting Jodi Cisco, M.D. to come to the floor, not passing to Dr. Cisco the critical nature of Ms. Lewis's condition and by not otherwise assuring that Dorothy Lewis received timely and appropriate care for her vascular emergency.

20.     If they nursing personnel at Logan General Hospital, including but not limited to Nurse A. Mullins, properly reported Dorothy Lewis's signs and symptoms to Jodi Cisco, M.D. who did not, when properly notified, make immediate arrangements for a timely transport of Dorothy Lewis, then the nursing personnel at Logan General Hospital negligently failed to comply with their professional obligation to advocate on Dorothy Lewis's behalf and assure that she obtained appropriate medical care.  Likewise, if the nursing personnel at Logan General Hospital assert that they were not ordered to be begin transferring Dorothy Lewis to a facility who could provide appropriate medical care until after the doppler examination was completed, the nursing personnel violated their professional duty to advocate on Dorothy Lewis's behalf and assure that she be immediately transferred to a facility that was capable of treating her condition.

21.     As a direct and proximate result of the nursing personnel's failures at Logan General, Dorothy Lewis suffered the loss of her right leg.

22.     The nursing personnel at Logan General failed to treat Dorothy Lewis's medical condition in the same manner that reasonably prudent nursing personnel should have which failure proximately caused or contributed to cause loss of Dorothy Lewis's right leg.

23.     As a direct and proximate result of the negligence of the Defendant's nursing employees, Dorothy Lewis has suffered the permanent loss of her right leg, has in the past and continues into the future to occur both pain and suffering and mental anguish, has suffered permanent disfigurement, has incurred in the past and will continue to incur future medical bills, and has otherwise suffered damages for aggravation, annoyance, inconvenience, and loss of enjoyment of life.

24.     As a direct and proximate result of the negligence of the Defendant, Kenneth Lewis has suffered a loss of consortium including the companionship of his wife.

25.     Plaintiffs have suffered additional economic losses for the injuries caused by the negligence of the Defendant's employees including future life care needs, loss of household services, and other associated economic losses.

26.     Dorothy Lewis and Kenneth Lewis demand judgment against the Defendant, individually and jointly for all damages permitted under West Virginia law including all economic and non-economic losses that are available.

27.     The actions of the nursing staff at Logan General Hospital were, at a minimum, done with a reckless disregard for the safety of Dorothy Lewis.  As a result, Plaintiffs seek the recovery of punitive damages in this matter.

**PLAINTIFFS DEMAND A TRIAL BY JURY.**

**Dorothy Lewis and Kenneth Lewis,**
By Counsel.


_____
Arden J. Curry, II (W. Va. Bar No. 907)
Pauley Curry, PLLC
P.O. Box 2786
Charleston, WV 25330-2786
(304) 342-6000 Phone
(304) 342-6007 Fax

7